FILED

2021 Aug-18  AM 10:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

HEATHER HARRIS,                    )
                                   )
           Plaintiff               )
                                   )
    vs.                            )      Case No.   4:20-cv-00710-HNJ
                                   )
SOCIAL SECURITYADMINISTRATION,     )
COMMISSIONER,                      )
                                   )
           Defendant               )

## MEMORANDUM OPINION

Plaintiff Heather Harris seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability, disability insurance, and supplemental security income benefits.   The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.   The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 12).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at §§ 404.1520(d), 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's

2

impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925.   That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.   *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.   20 C.F.R. §§ 404.1520(e), 416.920(e).   At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.   *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.   *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.   20

3

C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1520(g), 416.920(g).   If the claimant can perform other work, the evaluator will not find the claimant disabled.   *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).   If the claimant cannot perform other work, the evaluator will find the claimant disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"   *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.   *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Id.* (citations omitted).   Nonetheless, substantial evidence exists even if the evidence preponderates

4

against the Commissioner's decision.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Harris, age 42 at the time of the ALJ hearing, protectively filed an application for a period of disability and disability insurance benefits on March 22, 2017, alleging disability as of February 3, 2017.   (Tr. 15, 39, 180).   The court could not locate a copy of Harris's application for supplemental security income benefits in the administrative record, but the ALJ stated Harris filed such an application on August 17, 2017, also alleging disability as of February 3, 2017, and the parties do not challenge that finding. (Tr. 15).

The Commissioner denied Harris's claims, and Harris timely filed a request for hearing on July 5, 2017.   (Tr. 86-100, 104-11).   The Administrative Law Judge ("ALJ") held a hearing on February 20, 2019 (Tr. 34-81), and issued an opinion on April 15, 2019, denying Harris's claim.   (Tr. 12-28).

Applying the five-step sequential process, the ALJ found at step one that Harris did not engage in substantial gainful activity after February 3, 2017, her alleged onset date.   (Tr. 18).   At step two, the ALJ found Harris had the severe impairments of lower extremity fracture; spine disorders; depressive, bipolar, and related disorders; anxiety and obsessive compulsive disorders; and alcohol addiction disorder.   (*Id.*).   At step three, the ALJ found that Harris's impairments, or combination of impairments, did

5

not meet or medically equal any impairment for presumptive disability listed in 20

C.F.R. Part 404, Subpart P, Appendix 1.   (*Id.*).

Next, the ALJ found that Harris exhibited the residual functional capacity

("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except . . . occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, frequently balancing or stooping, occasionally kneeling, crouching or crawling, must avoid concentrated exposure to extreme cold and extreme heat, must avoid all exposure to unprotected heights, able to perform simple and some detailed tasks, frequent interaction with supervisors and co-workers, occasional interaction with the general public, can respond appropriately to changes in a routine work setting which are gradually introduced.

 (Tr. 20).

At step four, the ALJ determined Harris retained the ability to perform her past

relevant work as an industrial cleaner and garment inspector.   (Tr. 26).   At step five,

the ALJ alternatively determined Harris could perform a significant number of other

jobs in the national economy considering her age, education, work experience, and

RFC.   (Tr. 26-27).   Accordingly, the ALJ determined that Harris has not suffered a

disability, as defined by the Social Security Act, since February 3, 2017.   (Tr. 27).

Harris timely requested review of the ALJ's decision.   (Tr. 171-74).   On April

30, 2020, the Appeals Council denied review, which deems the ALJ's decision as the

Commissioner's final decision.   (Tr. 1-6).   On May 20, 2020, Harris filed her complaint

with the court seeking review of the ALJ's decision.   (Doc. 1).

## ANALYSIS

In this appeal, Harris argues the ALJ improperly considered the opinions of her treating physician, and further, he did not apply proper legal standards or provide substantial evidentiary support for the finding that Harris can perform past work.   For the reasons discussed below, the undersigned concludes neither contention warrants reversal.

### I.       The ALJ Properly Considered the Treating Physician's Opinion

Harris argues the ALJ improperly considered the opinions of Dr. Jane Teschner, Harris's treating physician.   As discussed below, the ALJ properly relied upon the remainder of the record, including Dr. Teschner's own treatment notes, the other medical evidence, and the state agency physician's opinions, to reject Dr. Teschner's assessments.

The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11ᵗʰ Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11ᵗʰ Cir. 1997)). Good cause exists when: (1) the evidence did not bolster the treating physician's opinion; (2) the evidence supported a contrary finding; or (3) a treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.   *Id.* at 1241.   An ALJ must clearly articulate the reasons for affording less weight to a treating physician's opinions. *Id.*   An ALJ does not commit reversible error when (1) he

articulates specific reasons for declining to give the treating physician's opinion controlling weight, and (2) substantial evidence supports these findings. *Moore*, 405 F.3d at 1212.

To determine the weight given to any medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional.   20 C.F.R. §404.1527(c); *see Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 832 (11th Cir. 2011) (stating that the ALJ will give more weight to the medical opinions of a source who has examined the plaintiff and opinions that are supported by medical signs and findings and are consistent with the overall "record as a whole").   The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion.   *Hearn v. Comm'r of Soc. Sec.*, 619 F. App'x 892, 895 (11th Cir. 2015) (citing *Bloodsworth*, 703 F.2d at 1240).

Dr. Teschner completed a Mental Health Source Statement Form on January 11, 2019.   She indicated Harris could understand, remember, and carry out very short and simple instructions; maintain attention, concentration and/or pace for periods of at least two hours; adjust to routine and infrequent work changes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.   Harris could not perform activities within a schedule, be punctual within customary tolerances, sustain an ordinary routine without special supervision, or interact with supervisors or

co-workers.   Harris would stay off-task 30 to 40% of a normal workday, and she would miss more than four days of work each month due to her psychological symptoms. Harris's symptoms existed back to February 3, 2017, and her medications would cause drowsiness and dizziness.   (Tr. 575).

During the administrative hearing, the vocational expert testified that an individual's need to remain off task 15% of the day, miss work more than one day per month, or avoid interaction with coworkers and supervisors would preclude all work activity.   (Tr. 79).   Thus, if the ALJ had credited Dr. Teschner's opinion, he would have found Harris disabled.

However, the ALJ afforded Dr. Teschner's opinion little weight because he found it 'inconsistent with [Harris's] longitudinal examination findings from multiple providers showing that she was alert, oriented, clean, well groomed, cooperative, and in no distress." (Tr. 26).   In addition, the ALJ stated Dr. Teschner's own records reflected Harris "stopped taking her medications and felt like it was helping."   (*Id.*). Harris interacted appropriately during her visits to Dr. Teschner, reported getting along with her co-workers, and denied anxiety, depression, and memory loss.   Finally, the ALJ considered Dr. Teschner's lack of a specialty in mental health.   (*Id.*).

The ALJ satisfied his obligation to articulate detailed reasons for rejecting Dr. Teschner's opinions because he pointed out the inconsistency of those opinions with Dr. Teschner's own records, the records of other medical providers, and Harris's

hearing testimony.   *See Phillips*, 357 F.3d at 1240 (citing *Lewis*, 125 F.3d at 1440).   The ALJ also appropriately considered that Dr. Teschner, a primary care provider, lacked a specialty in mental health.   *See* 20 C.F.R. §404.1527(c)(5) (Commissioner should consider the specialization of the medical professional when determining how much weight to assign the provider's opinion).

Substantial evidence also supports the ALJ's decision.   When Harris first saw Dr. Teschner on September 26, 2017, she complained of hypertension and ankle pain, not mental health symptoms.   In fact, she denied anxiety, depression and memory loss, and the clinical examination revealed appropriate mood and affect, appropriate interaction, and no unusual behavior.   She appeared clean, well-groomed, and in no acute distress. (Tr. 576-78).   Dr. Teschner reported similar findings during subsequent visits on November 9, 2017 (Tr. 580-82), December 4, 2017 (Tr. 583-85), and January 25, 2018 (Tr. 586-88).

On March 22, 2018, Harris complained of anxiety, depression, and insomnia, and Dr. Teschner prescribed fluoxetine (Prozac) and Xanax.   (Tr. 589-90, 594).   On April 19, 2018, Harris reported moderate anxiety, but she displayed full alertness and orientation.   She cooperated during the examination, displayed no delirium or agitation, and demonstrated appropriate mood and affect.   She reported Xanax helped and she felt "back to h[]er self."   (Tr. 595-96).

On May 29, 2018, Harris did not complain of mental health symptoms. She denied anxiety, depression, and memory loss. During the examination, she exhibited full alertness and orientation, cooperative demeanor, no delirium or agitation, and appropriate mood and affect. Dr. Teschner noted Harris's urine drug screen tested positive for multiple drugs she had not prescribed, and she cautioned Harris she would not prescribe any more Xanax if Harris continued to take additional medications. (Tr. 598-600).

On July 24, 2018, the examination record reflects similar findings as to Harris's mental conditions, and the urine drug screen did not detect any medications other than Xanax. (Tr. 601-03). On August 21, 2018, the examination reflected similar findings as to her mental conditions, and Dr. Teschner characterized Harris's anxiety and depression as "stable." (Tr. 604-06). Dr. Teschner noted similar findings as to her mental conditions on September 20 and October 30, 2018. (Tr. 607-12). On November 30, 2018, Harris complained of moderate anxiety, but the examination findings mirrored earlier visits. (Tr. 613-15). On December 28, 2018, Harris's anxiety level had increased to moderate to severe, but the clinical findings nonetheless remained the same. Dr. Teschner noted Harris slept well on Lunesta, and Xanax controlled her anxiety. (Tr. 616-18).

The ALJ incorrectly stated Harris told Dr. Teschner she quit taking her medications and felt like it helped. The record does contain that statement, but in

11

Harris's May 14, 2018, CED Mental Health Center record, not in Dr. Teschner's records.   Despite that discrepancy, while Dr. Teschner's treatment records consistently reflect treatment for anxiety and depression, they also indicate Harris's symptoms exceeded the moderate level on only one occasion, Harris consistently produced normal clinical examinations, and medication generally controlled Harris's symptoms.   Thus, Dr. Teschner's office records as a whole reflect less severe mental health symptoms than Dr. Teschner assessed on the Mental Health Source Statement, and those records provide substantial evidentiary support for the ALJ's decision to afford Dr. Teschner's opinion little weight.

Harris's records from other providers also support the ALJ's decision.   On May 4, 2016, Harris complained of compulsive thoughts and fatigue, but she denied decreased need for sleep, depressed mood, startling easily, excessive worry, loss of appetite, paranoia, or thoughts of death or suicide.   (Tr. 539).

On July 16, 2016, November 16, 2016, and February 3, 2017, Harris presented as cooperative, and she displayed appropriate mood and affect.   (Tr. 448, 455, 461).

On a November 9, 2016, intake form for C.E.D. Mental Health, Harris reported severe depression, mild mood swings, grief, severe panic attacks, suicidal ideations, and moderate alcohol usage. She displayed appropriate appearance, dysphoric mood, labile affect, and full orientation.   She stated she wished she was dead, but she would never harm herself because of her children.   She reported depressed feelings, sleep and

12

appetite disturbances, feeling tired, feeling bad about herself, difficulty concentrating, and thinking she would be better off dead nearly every day.   She also experienced loss of interest or pleasure and behavioral changes more than half the days.   Her problems made it very difficult for her to do work, take care of things at home, and get along with other people.   She appeared clean, but she maintained poor eye contact and slumped posture.   She experienced normal thought processes and normal thought content, other than thoughts of being better off dead.   She had experienced one or two audio hallucinations, but she displayed full orientation.   She experienced impaired attention span, difficulty acknowledging her role in problems, and impaired decision making, but she did not experience impaired memory.   She did not take any medications on that date because she lost her insurance coverage.   She identified some symptoms of alcohol abuse.   (Tr. 395-410).

        On January 3, 2017, Harris reported depression, but she had normal sleep patterns, good insight, good judgment, logical thought processes, normal thought content, adequate attention and concentration, good appetite, fair energy and motivation, appropriate behavior, adequate weight, and moderate risk.   She stated she quit her job due to anxiety.   (Tr. 394).   During a counseling session that same day, Harris reported feeling better with her medications and using coping skills to ward off a panic attack.   She presented as neat, clean, and appropriately dressed, with euthymic mood, normal affect, and full orientation.   (Tr. 393).

On February 18, 2017, Harris displayed normal mood, affect, behavior, judgment, and thought content.   (Tr. 420, 728).

On February 21, 2017, Harris displayed full orientation; well-adjusted, pleasant and cooperative mood appropriate for the circumstances; appropriate insight, judgment, interpersonal dynamics, and expectations; and appropriate recent and remote memory.   (Tr. 434).

During a March 9, 2017, counseling session, Harris reported depression because she injured her leg in a car accident and could not work.   She displayed normal affect and full orientation.   (Tr. 392).

On April 20, 2017, Harris reported that her anxiety and depression did not interfere with her relationships or daily living activities.   She experienced no homicidal ideations, significant weight gain or loss, delusions, hallucinations, shortness of breath, crying spells, panic, isolation, sleep or appetite disturbances, or apathy, and she displayed good mood and energy.   The clinical evaluation revealed good judgment, normal mood and affect, full orientation, and intact memory.   (Tr. 467-68).

During an April 28, 2017, counseling session, Harris reported daily symptoms of depression, anxiety, and insomnia.   She experienced emotional difficulty as a result of not working.   She displayed clean and appropriate appearance, dysphoric mood, labile affect, and full orientation.   (Tr. 391).

On May 2, 2017, Harris displayed full orientation, no acute distress, normal level of consciousness, and good personal hygiene.   (Tr. 537).

On June 14, 2017, Harris reported anxiety, but no depression or insomnia.   (Tr. 548).

On June 27, July 13, and August 10, 2017, Harris displayed full alertness and orientation, and well-adjusted, pleasant, cooperative, and appropriate mood and affect. (Tr. 559-64).

On July 5, 2017, Harris reported anxiety and insomnia, but she displayed good insight, fair judgment, logical thought processes, normal thought content, adequate attention and concentration, good appetite, fair energy, appropriate behavior, adequate weight, and moderate risk.   (Tr. 565).

On August 9, 2017, Harris reported anxiety and depression, and she stated she recently stopped taking Xanax.   (Tr. 554).

On August 22, 2017, Harris presented to a counseling session with neat appearance, dysphoric mood, normal affect, and full orientation.   (Tr. 566).

On August 30, 2017, Harris demonstrated full orientation, normal mood and affect, normal behavior, and normal judgment and thought content. (Tr. 705).

On September 6, 2017, Harris displayed no agitation, behavioral problems, confusion, decreased concentration, nervousness, anxiousness, hyperactivity,

hallucinations, self-injury, or suicidal ideas.   She exhibited full orientation, normal mood and affect, normal behavior, and normal thought content. (Tr. 707).

On October 22, 2017, Harris presented to a counseling session with appropriate appearance, euthymic mood, flat and sad affect, and full orientation.   She reported both anxiety and depression, but medication controlled her symptoms.   (Tr. 567).

On November 1, 2017, Harris presented as fully alert and oriented, and she displayed no acute distress.   (Tr. 571-72).

On February 1, 2018, Harris presented to a counseling session with appropriate appearance, euthymic mood, normal affect, and full orientation.   She reported sleep disturbances.   (Tr. 568).

On April 13, 2018, Harris presented to a counseling session with appropriate appearance, euthymic mood, normal affect, and full orientation.   She reported her depression had improved, although she did experience mood swings.   (Tr. 569).

On May 14, 2018, Harris reported depressed mood and insomnia.   She displayed fair insight and judgment, logical thought processes, normal thought content, adequate attention and concentration, good appetite, fair energy and motivation, appropriate behavior, increased weight, and moderate risk.   She reported that she quit taking her medications, and it helped.   (Tr. 570).

On August 14 and August 23, 2018, Harris displayed full orientation and alertness.   (Tr. 709, 712).

16

As a whole, these records support the ALJ's decision to reject Dr. Teschner's assessment.   Harris reported more serious symptoms when she first began treatment with C.E.D. Mental Health on November 9, 2016, but she was not taking any mental health medication at that time.   After that date, she did continue to experience some mental health symptoms, but those symptoms decreased after she recommenced mental health medications, which she stated controlled her symptoms until May of 2018, when she experienced even greater relief after stopping her medications.

Finally, the opinion of the state agency physician supports the ALJ's decision to reject Dr. Teschner's assessment.   Dr. Robert Estock, the state agency physician, examined Harris's records on May 5, 2017, and opined she did not have understanding or memory limitations.   She experienced moderate limitations in her abilities to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, maintain punctuality within regular tolerances, complete a normal workday and workweek without interruption from psychological symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.   She experienced no significant limitations in her abilities to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, or make work-related decisions.   (Tr. 95). To accommodate her limitations, Dr. Estock stated Harris could

sustain attention and concentration for 2-hour periods at a time to complete a normal workday at an acceptable pace and schedule. [She] may require regular, but not excessive work breaks during the workday. [She] may be expected to miss 1 or 2 days of work per month due to exacerbation of psychiatric symptoms. [She] could tolerate ordinary work pressures but should avoid: excessive workloads, quick decision making, rapid changes, and multiple demands.

(Tr. 96).

Dr. Estock also stated Harris would experience moderate limitation of her abilities to interact appropriately with the general public, accept instructions, and respond appropriately to criticism from supervisors. She would experience no significant limitation of her abilities to ask simple questions, request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. To accommodate her limitations, Dr. Estock suggested that Harris's "interaction and contact with the general public should be casual. Criticism and feedback from supervisors and co-workers in the workplace should be casual and non-confronting or supportive." (*Id.*).

Finally, Dr. Estock stated Harris would experience moderate limitation of her ability to respond appropriately to changes in the work setting, but no significant limitation of her abilities to be aware of normal hazards and take normal precautions, travel in unfamiliar places, use public transportation, set realistic goals, or make plans

independently of others.   To accommodate her limitations, Dr. Estock suggested that

changes in Harris's workplace "should be gradually introduced."   (Tr. 96).

The ALJ gave Dr. Estock's opinion great weight "because it is consistent with

[Harris's] conservative treatment with medications and individual therapy," and with

her medical records demonstrating she "was consistent[ly] found alert, oriented, clean,

well groomed, cooperative, and in no distress . . . ."   (Tr. 25).   That decision complies

with Social Security law, which permits an ALJ to favor a medical opinion he perceives

as the most consistent with the record evidence.   *See* 20 C.F.R.   §§ 404.1527(c),

416.927(c); *Davis*, 449 F. App'x at 832.

The law also permits an ALJ to credit the opinion of a state agency physician

over the opinion of a consulting or treating physician, if the evidence so warrants.

> [T]he opinions of State agency medical and psychological
> consultants and other program physicians and psychologists can be given
> weight only insofar as they are supported by evidence in the case record,
> considering such factors as the supportability of the opinion in the
> evidence including any evidence received at the administrative law judge
> and Appeals Council levels that was not before the State agency, the
> consistency of the opinion with the record as a whole, including other
> medical opinions, and any explanation for the opinion provided by the
> State agency medical or psychological consultant or other program
> physician or psychologist.

SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996).   As stated in *Duncan v. Berryhill*, No.

3:15-cv-02164-LSC, 2017 WL 3969578 (N.D. Ala. Sept. 8, 2017):

> [M]edical consultants or medical experts are highly qualified
> medical specialists who are experts in the Social Security disability

19

programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. §[§ 404.1527(e), 404.1513a]; SSR 96-6p. Indeed, a medical expert's opinion may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances, such as when the medical expert has reviewed the complete case record. *See* SSR 96-6p. In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

*Id.* at *4.

Here, as discussed, substantial evidence supports the ALJ's finding that Harris's medical records demonstrated alertness, full orientation, cleanliness, good grooming, cooperation, and lack of acute distress. Thus, substantial evidence supported the ALJ's decision to credit Dr. Cooper's assessment over Dr. Fleming's.

In summary, the ALJ adequately articulated his reasons for rejecting Dr. Teschner's assessment of Harris's mental health limitations, and he relied upon permissible considerations, including Dr. Teschner's own records, Harris's other medical records, and the state agency physician's opinion, which provided substantial evidentiary support for the ALJ's residual functional capacity finding. The ALJ did not err in evaluating Dr. Teschner's opinion.[2]

---

[2] In her reply brief, Harris argues "[t]he denial of benefits was improperly based on a finding that opinions of the treating physician and the Vocational Expert were **opinions on an issue reserved for the Commissioner.**" (Doc. 15, at 6 (emphasis in original)). But the ALJ did not reject Dr. Teschner's opinion on the basis that it addressed a matter reserved to the Commissioner, and as discussed, the ALJ did not error in considering Dr. Teschner's opinion. Therefore, Harris's argument has no applicability.

## II.   The ALJ Properly Found that Harris Can Perform Past Work

As discussed, the ALJ found Harris could perform her past relevant work as an industrial cleaner and garment inspector.   (Tr. 26).   Harris argues the ALJ erred in that finding because he "did not consider all of the duties of [her] past work and evaluate [her] ability to perform those duties in spite of the impairments."   (Doc. 13, at 27).

The ALJ must determine whether a claimant can perform her past work, "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2); *see also* 20 C.F.R. § 416.960(b)(2).   That determination must include a specific "finding of fact as to the physical and mental demands of the past job/occupation."   SSR 82-62, 1982 WL 31386, at *4; *see also Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986) ("In the absence of evidence of the physical requirements and demands of appellant's work the ALJ could not properly determine that she retained the residual functional capacity to perform it.").   To gather the pertinent information, the ALJ may rely upon the claimant's testimony, the testimony of other people familiar with the claimant's work, the testimony of a vocational expert, and/or the Department of Labor's Dictionary of Occupational Titles (DOT).   20 C.F.R. § 404.1560(b)(2); *see also* 20 C.F.R. § 416.960(b)(2).

The ALJ followed those requirements in this case.   During the administrative hearing, Harris testified her past work at Keystone involved cleaning and sanitizing food processing machines with a power hose.   She sometimes had to lift equipment

21

weighing more than ten pounds in order to clean it.   She did not remember the weight of the pressure hoses she used.   At Keystone, she did not interact often with co-workers, as the job required her to work alone, but when she did interact with others, she typically had no problem doing so.   (Tr. 46, 55-57).

Her past work at Coosa Valley Rehab and Health Company involved cooking for a nursing home.   That job required her to lift no more than five pounds, as she wheeled most heavy items on a cart.   At Coosa Valley, none of the employees got along with each other, but they avoided each other and simply did their work. (Tr. 47, 56-57). Her past work at Cintas involved inspecting clothing on an assembly line.   That job did not require any lifting, and the record does not contain any information regarding the relational requirements of that work environment.   (Tr. 47-48, 75).

The ALJ consulted a vocational expert to classify Harris's past relevant work pursuant to DOT guidelines, and he afforded the vocational expert the opportunity to ask additional questions to clarify the nature of Harris's past work.   The vocational expert testified that Harris

> worked as an industrial cleaner, DOT number 381.687-018, the SVP is 2, unskilled, *exertion level medium, performed at medium*.   Also, as a hospital food service helper, DOT number 319.677-014, the SVP is 2, unskilled, the exertion level medium; however, performed at light.   Also, was a garment inspector, DOT number 689.687-070, the SVP is 3, semi-skilled, the exertion level is light.

(Tr. 75 (emphasis added)).   He then asked the vocational expert whether a hypothetical person with Harris's residual functional capacity could perform Harris's past work, and the vocational expert responded affirmatively.   (Tr. 75-76).

However, despite following the regulatory requirements to develop the record regarding the requirements of Harris's past relevant work, the ALJ's decision contained a factual error.   The vocational expert classified Harris's past work as an industrial cleaner at the *medium* exertional level, both as listed in the DOT and as actually performed.   (Tr. 75).   Yet the ALJ's residual functional capacity finding limited Harris to *light* work, and he asked the vocational expert to assume a hypothetical person who could work at the *light* exertional level.   (Tr. 20, 26, 76).   The ALJ did not explain his deviation from the vocational expert's classification of Harris's past work at the medium exertional level, and the record contains no evidence to justify that deviation. Therefore, substantial evidence does not support the ALJ's decision that Harris could perform her past relevant work as an industrial cleaner.

Even so, the ALJ's mistake constituted only harmless error because he also found Harris could perform her past relevant work as a garment inspector, which she performed at the light exertional level, consistent with the ALJ's residual functional capacity finding.   The ALJ also found Harris could perform other jobs existing in significant numbers in the national economy, including bench assembler, marker, and routing clerk, and Harris did not challenge that finding.   Both of those findings

23

supported the ALJ's conclusion that she suffered no disability, and the ALJ made those findings in accordance with applicable regulatory authority.   Therefore, this argument does not provide a basis for overturning the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 18th day of August, 2021.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE